UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

------------------------------------ X
TOMOCREDIT, INC., :

    Plaintiff, : Case No.:

v. : **VERIFIED COMPLAINT**

JASON MIKULA, : **JURY TRIAL DEMANDED**

    Defendant. :

------------------------------------ X

Plaintiff TomoCredit, Inc. ("TomoCredit" or "Plaintiff"), by and through its undersigned counsel, for its Verified Complaint against Defendant Jason Mikula ("Mikula" or "Defendant"), hereby alleges as follows:

## STATEMENT OF THE CASE

1. This case arises from a calculated and malicious campaign by Defendant Jason Mikula to destroy TomoCredit's business through a barrage of false, misleading, and defamatory statements published to his tens of thousands of subscribers, as well as the public at large.

2. Mikula, who publishes articles purportedly covering the financial services industry, has weaponized his platform to accuse TomoCredit—a legitimate fintech company that has helped countless consumers build credit and escape the cycle of credit poverty—of being an "obvious scam" engaged in "outright fraud." These accusations are not merely false; they are demonstrably reckless, unsupported by any evidence, and have been made with full knowledge of their falsity.

3. Mikula published these defamatory statements despite having received prior notice from TomoCredit that his characterizations were untrue. He ignored TomoCredit's demands to cease his defamatory conduct and retract his false statements. Instead, he doubled down,

1

publishing additional defamatory articles and social media posts that have now caused catastrophic damage to TomoCredit's business.

4. The consequences of Mikula's vendetta have been swift and devastating. Within days of his most recent defamatory publication, two of TomoCredit's major vendors terminated their relationships with TomoCredit. Moreover, a key business affiliate specifically cited Mikula's article as the reason it would not renew its partnership with TomoCredit. TomoCredit's reputation, painstakingly built over years of providing valuable credit awareness services to underserved communities including immigrants, people of color, and women, has been irreparably tarnished in the eyes of the public, potential customers, and essential business partners.

5. Mikula knew or should have known that branding a financial services company as fraudulent would deliver a death blow to its business. He did so anyway—without factual basis, without investigation, and without regard for the truth. TomoCredit brings this action to hold Mikula accountable, to stop his defamatory campaign, and to recover the substantial damages his misconduct has caused.

## PARTIES

6. Plaintiff TomoCredit is a corporation organized and existing under the laws of the State of Delaware and with its principal place of business at 301 Howard Street, Suite 950, San Francisco, California 94105.

7. Defendant Jason Mikula is an individual who, on information and belief, resides in Mundelein, Illinois. Mikula claims that he is "an independent fintech and banking advisor, consultant, and investor." Mikula also claims that he is "the Managing Director of Fintech Business Weekly, a news media entity focused on the financial services industry." Mikula publishes a Substack newsletter and podcast entitled Fintech Business Weekly about the financial

services industry.[1] Mikula has over 91,000 subscribers on Substack, and on information and belief, he has subscribers and followers located in Illinois.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 (diversity) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between citizens of different states. For purposes of diversity jurisdiction, TomoCredit is a citizen of Delaware and California, and on information and belief, Mikula is not a citizen of either Delaware or California.

9. This Court has personal jurisdiction over Mikula because, on information and belief, he resides in Mundelein, within the State of Illinois. The Court also has personal jurisdiction over Mikula because the causes of action arise from, on information and belief, the transaction of business and the commission of a tortious act within the State of Illinois.

10. Venue in this District is proper pursuant to 28 U.S.C. §§ 1391(b) and (c) because Mikula is subject to personal jurisdiction in this District and a substantial part of the events giving rise to this action occurred in this District.

## STATEMENT OF FACTS

### TomoCredit Was Founded to Break the Cycle of "Credit Poverty"

11. TomoCredit was founded in 2019 by Kristy Kim. When Ms. Kim was a young immigrant student at the University of California at Berkeley, she was denied five times for an auto loan. She realized that basic living needs were made nearly impossible for someone new to the country without a credit score. She founded TomoCredit to break the cycle of "credit poverty," in particular for immigrants, people of color, and women who may not have a credit history.

---

[1] *See* FINTECH BUSINESS WEEKLY, https://fintechbusinessweekly.substack.com/ (last visited Feb. 24, 2026).

3

12. Today, TomoCredit is a financial technology company that provides credit awareness services to consumers throughout the United States. TomoCredit offers a wide range of credit-related products, including its TomoBoost credit awareness service, which has demonstrably helped customers improve their credit scores.

**Mikula Publishes a Series of False, Misleading, and Defamatory Articles About TomoCredit**

13. Mikula publishes a Substack newsletter entitled Fintech Business Weekly and has published a number of articles and social media posts about TomoCredit.

14. For example, on August 31, 2025, Mikula published an article about TomoCredit, entitled "'Consumer Protection' Is Already Failing Americans" (the "First Article").[2] A true and correct copy of the First Article is attached hereto as **Exhibit A**.

15. That same day, Mikula cross-promoted the First Article on his X account, stating in relevant part: "If the consumer protection apparatus in the US can't stop an obvious scam like TomoCredit …" (the "First Social Media Post").[3]

16. As another example, on February 1, 2026, Mikula published an article about TomoCredit, entitled "Fintech's Dumbest Lawsuit: Mastercard-Backed TomoCredit Flouts Trademark Dispute Settlement" (the "Second Article," and together with the First Article, the "Articles").[4] A true and correct copy of the Second Article is attached hereto as **Exhibit B**.

---

[2] *See* Jason Mikula, *"Consumer Protection" Is Already Failing*, FINTECH BUSINESS WEEKLY (Aug. 31, 2025), https://fintechbusinessweekly.substack.com/p/consumer-protection-is-already-failing.
[3] *See* Jason Mikula (@mikulaja), X (Aug. 31, 2025, 11:32 AM), https://x.com/mikulaja/status/1962176729914683504.
[4] *See* Jason Mikula, *Fintech's Dumbest Lawsuit: Mastercard-Backed TomoCredit Flouts Trademark Dispute Settlement*, FINTECH BUSINESS WEEKLY (Feb. 1, 2026), https://fintechbusinessweekly.substack.com/p/fintechs-dumbest-lawsuit-mastercard.

17. That same day, Mikula cross-promoted the Second Article on his X account, stating in relevant part: "Fintech Biz Weekly just dropped: @TomoCredit, which, at this point, is literally just scamming consumers …" (the "Second Social Media Post," and together with the First Social Meida Post, the "Social Media Posts").[5]



18. The Articles and Social Media Posts contain a number of false, misleading, and defamatory statements about TomoCredit.

### *False Statements Accusing TomoCredit's Business of Being Fraudulent*

19. Mikula falsely accuses TomoCredit of fraud without any factual basis. Mikula also falsely accuses TomoCredit of providing false data to credit bureaus and scamming consumers. He also falsely characterizes TomoCredit's product as fraudulent.

20. The First Article improperly states (among other things):

a. "Tomo's next iteration was even more dubious: furnishing fake tradelines."

---

[5] *See* Jason Mikula (@mikulaja), X (Feb. 1, 2026, 9:37 AM), https://x.com/mikulaja/status/201797044803045394 7.

5

    b. "Tomo began charging as much as hundreds of dollars per month to report bogus trade lines of up to $30,000 to the credit bureaus in order to artificially inflate users' credit scores."

21. The First Social Media Post improperly states (among other things):

    a. "[A]n obvious scam like TomoCredit …."

22. The Second Article improperly states (among other things):

    a. "[I]t is fair to describe Tomo's business, at this point, as outright fraud."

    b. "[T]he company pivoted to offering a 'credit building' service that consisted of furnishing fake, back-dated tradeline data …."

23. The Second Social Media Post improperly states (among other things):

    a. "@TomoCredit, which, at this point, is literally just scamming consumers …."

24. Contrary to Mikula's statements, TomoCredit's business is not "outright fraud." TomoCredit does not furnish (and has not furnished) "fake, back-dated" tradeline data to credit bureaus in order to "artificially inflate" customers' credit scores. Moreover, TomoCredit is not "scamming consumers." TomoCredit is a legitimate business that has demonstrably helped customers improve their credit scores through proper means.

25. The above-referenced statements made by Mikula are false, misleading, and defamatory. Indeed, Mikula provides no supporting evidence for his false statements accusing TomoCredit of fraud.

*** False Statements Accusing TomoCredit of Deceptive Marketing Practices ***

26. Mikula falsely accuses TomoCredit of intentional consumer deception and bait-and-switch tactics.

27. The First Article improperly states (among other things):

6

    a. TomoCredit "continu[es] to aggressively market its fake tradeline-as-a-service offering, including by misleadingly implying in marketing emails that it's offering an actual credit card product."

28. The Second Article improperly states (among other things):

    a. "Tomo even goes so far as to send marketing emails that appear designed to trick recipients into thinking they're pre-approved for a credit card, then directing them to sign up for a 'VIP' subscription …."

    b. "[I]n what can only be described as a naked bait-and-switch, there is no credit card."

29. Contrary to Mikula's statements, TomoCredit offers a wide range of credit-related products. Moreover, TomoCredit's website contains clear disclosures stating: "Pre-qualification or application does not guarantee approval. Eligibility is determined by underwriting and verification of multiple factors. Only qualified applicants will receive final approval. Pre-qualification will not affect your credit score."[6]

30. The above-referenced statements made by Mikula are false, misleading, and defamatory.

### *False Statements Accusing TomoCredit of Improper Legal Action*

31. Mikula falsely accuses TomoCredit of taking improper legal action by filing a trademark case against a third party.

32. The First Article improperly states (among other things):

    a. "TomoCredit filed a case against Tomo Mortgage, an unrelated company, seeking to hijack the company's tomo.com domain — even though the mortgage company

---

[6] *See* TOMO, https://tomocredit.com/ (last visited Feb. 24, 2026).

7

had held and used the domain since 1996, literally decades before TomoCredit existed."

33. Contrary to Mikula's statements, TomoCredit has held valid trademark rights in the TOMO mark since 2019 and is entitled to protect those rights against infringing uses. Tomo Mortgage admitted in publicly available court filings that it was not founded until 2020 and did not launch until 2021. And in its publicly available trademark application, Tomo Mortgage admitted that it did not begin using the mark TOMO until 2021 (years after TomoCredit). Tomo Mortgage did not even acquire the domain at issue until 2023. Indeed, TomoCredit successfully cancelled Tomo Mortgage's infringing mark with the U.S. Patent and Trademark Office in October 2023.

34. The above-referenced statements made by Mikula are false, misleading, and defamatory.

## Mikula Ignores TomoCredit's Cease-and-Desist Letters

35. On February 13, 2026, TomoCredit, through counsel, sent Mikula a cease-and-desist letter demanding the immediate removal of the Articles on the grounds that they contain numerous false, misleading, and defamatory statements about TomoCredit that have caused, and continue to cause, substantial harm to TomoCredit's business reputation and goodwill. A true and correct copy of the cease-and desist letter is attached hereto as **Exhibit C**.

36. As of the date of this Complaint, Mikula has not responded to the February 13, 2026 letter or removed the defamatory Articles.

37. As noted in that letter, this was not the first occasion that TomoCredit notified Mikula of his false and defamatory statements about the company. TomoCredit previously sent Mikula a cease-and-desist letter on February 18, 2024 about another false, misleading, and defamatory article about TomoCredit. Mikula did not respond to that letter or remove his article.

8

38. Despite TomoCredit's notice letters, Mikula has continued his misguided vendetta against TomoCredit, writing defamatory articles and refusing to remove them when contradicted by the facts and law.

**TomoCredit Has Lost Its Customers, Vendors and Business Partners, and Reputation as a Result of Mikula**

39. The Articles and Social Media Posts contain numerous false, misleading, and defamatory statements about TomoCredit that have caused, and continue to cause, substantial harm to TomoCredit's business reputation and goodwill.

40. As a result of Mikula's defamatory statements, TomoCredit has lost its existing and prospective customers, its major vendors and other business partners which are critical for its business operations, and most importantly, its valuable reputation in the industry and with the public at large.

41. As of the date of this Complaint, TomoCredit has lost two of its major vendors, which has directly hampered its ability to operate:

   a. On February 9, 2026, a week after the Second Article, one of TomoCredit's vendors notified TomoCredit that it would no longer be able to offer its services to TomoCredit starting on February 23, 2026; and

   b. On February 11, 2026, less than two weeks after the Second Article, another one of TomoCredit's vendors notified TomoCredit that it decided to terminate its services and agreement with TomoCredit effective immediately.

42. Moreover, on February 17, 2026, one of TomoCredit's affiliates informed TomoCredit that it would not renew its partnership with TomoCredit and specifically cited Mikula's Second Article as the reason for not renewing the partnership.

43. Indeed, Mikula's defamatory statements have caused TomoCredit significant damage and challenged its very existence.

44. This is not the first time that Mikula has published defamatory statements about TomoCredit. To date, he has published over 20 articles and social media posts about TomoCredit. If Mikula is not enjoined, he will continue to publish false, misleading, and defamatory statements and irreparably damage TomoCredit's business reputation and goodwill.

45. Mikula's defamatory statements have not remained confined to his own followers—they have been disseminated to an even wider audience through republication by others.

46. For example, Fintech Takes published an article that expressly relied upon and cited Mikula's reporting, stating: "Again, thanks to some recent reporting from Jason Mikula (which he was kind enough to share with me), …." The article further stated: "This ignores some very crucial pieces of context, including the fact (first reported by Jason Mikula) …."[7]

47. As another example, on February 6, 2026, five days after Mikula published the First Article, Forbes published an article concerning TomoCredit that contained similar false, misleading, and defamatory statements.[8] Upon learning of the Forbes article, TomoCredit immediately sent a cease and desist letter to Forbes, and in response, Forbes corrected the article. Forbes's willingness to correct the record stands in stark contrast to Mikula's conduct.

48. As a result of Mikula's false, misleading, and defamatory statements, and his failure to remove his Articles, TomoCredit has been forced to commence this action against Mikula.

---

[7] *See* Alex Johnson, *Fintech Backlog*, FINTECH TAKES (Oct. 18, 2024), https://fintechtakes.com/articles/2024-10-18/fintech-backlog/.
[8] *See* Jeff Kauflin, *TomoCredit Says It Will Boost Your Credit Score – But Here's Why That's Misleading*, FORBES (Feb. 6, 2026), https://www.forbes.com/sites/jeffkauflin/2026/02/06/this-1000-a-year-credit-boosting-service-rarely-improves-scores-but-still-takes-your-money/.

## COUNT I
## Defamation *Per Se*

49. TomoCredit repeats and realleges paragraphs 1 through 48 hereof as if fully set forth herein.

50. As set forth above, Mikula published the Articles and Social Media Posts containing numerous false, misleading, and defamatory statements of and concerning TomoCredit. Specifically, Mikula falsely accused TomoCredit of engaging in "outright fraud," furnishing "fake" and "bogus" tradelines to credit bureaus to "artificially inflate" customers' credit scores, "scamming consumers," engaging in deceptive marketing practices and "bait-and-switch" tactics, and improperly seeking to "hijack" another company's domain.

51. These statements are defamatory because they expose TomoCredit to public hatred, contempt, and aversion. They induce an evil or unsavory opinion of TomoCredit in the minds of right-thinking persons by portraying TomoCredit as a fraudulent enterprise that deceives consumers and engages in illegal conduct. These statements have deprived TomoCredit of the confidence of the public, business partners, and prospective and actual customers.

52. Mikula published these defamatory statements to third parties through his Substack newsletter, Fintech Business Weekly, which has over 91,000 subscribers, and his X account, which has about 27,700 followers.

53. Mikula acted with fault in publishing these defamatory statements because, on information and belief, he knew them to be untrue when he made the statements. TomoCredit previously sent Mikula a cease-and-desist letter on February 18, 2024, notifying him of his false and defamatory statements about TomoCredit. Despite this notice, Mikula continued to publish defamatory statements about TomoCredit, including the Articles and Social Media Posts at issue.

11

Mikula had no factual basis for accusing TomoCredit of fraud or other illegal conduct. Mikula either knew his statements were false or acted with reckless disregard for their falsity.

54. The statements published by Mikula in the Articles and Social Media Posts are false. TomoCredit is a legitimate financial technology company that provides credit awareness services and has demonstrably helped customers improve their credit scores through proper means.

55. The defamatory statements are actionable *per se* because they tend to injure TomoCredit in its trade, business, and profession. Mikula's statements accusing TomoCredit of "outright fraud," furnishing "fake" tradelines, "scamming consumers," and engaging in deceptive practices directly impugn the integrity and lawfulness of TomoCredit's business operations. Such statements are inherently injurious to TomoCredit's reputation in its industry and among consumers.

56. Additionally, Mikula's statements accusing TomoCredit of fraud impute to TomoCredit the commission of a serious crime, which is independently actionable as defamation *per se*.

57. As a direct and proximate result of Mikula's defamatory statements, TomoCredit has suffered and continues to suffer substantial damages, including but not limited to harm to its business reputation and goodwill, loss of customers, loss of business relationships with vendors and other partners, and other consequential damages.

58. Mikula's conduct in publishing and refusing to retract or remove the defamatory statements despite notice of their falsity was willful, wanton, and malicious, entitling TomoCredit to an award of punitive damages in an amount sufficient to punish Mikula and deter him and others from engaging in similar conduct in the future.

## COUNT II
## Trade Libel

59. TomoCredit repeats and realleges paragraphs 1 through 58 hereof as if fully set forth herein.

60. Mikula published the Articles and Social Media Posts to third parties, including to his thousands of Substack subscribers and X followers, as well as to the general public via the Internet.

61. The Articles and Social Media Posts contain numerous false statements of fact disparaging and negatively reflecting upon the condition, value, and quality of TomoCredit's products and services. As set forth above, Mikula falsely accused TomoCredit of operating a fraudulent business, furnishing "fake" and "bogus" tradeline data to credit bureaus, "scamming consumers," engaging in deceptive "bait-and-switch" marketing tactics designed to trick consumers, and improperly pursuing trademark litigation against third parties. These statements are demonstrably false and have no basis in fact.

62. Mikula published the false statements with actual malice. Mikula knew or recklessly disregarded that his statements were false at the time of publication.

63. In the alternative, Mikula published the false statements with implied malice, as evidenced by his reckless disregard for the truth of his statements. Mikula failed to conduct any reasonable investigation into the accuracy of his accusations before publishing them. Indeed, Mikula provides no supporting evidence for his false accusations that TomoCredit's business constitutes "outright fraud" or that TomoCredit furnishes "fake" tradeline data to credit bureaus. Moreover, Mikula's malice is further demonstrated by his refusal to retract or remove the defamatory Articles and Social Media Posts after receiving TomoCredit's cease-and-desist letter dated February 13, 2026, which informed him of the falsity of his statements and demanded their

removal. Mikula's continued publication of the Articles and Social Media Posts despite actual knowledge of their falsity constitutes clear and convincing evidence of actual malice.

64. As a direct and proximate result of Mikula's false, misleading, and defamatory statements, TomoCredit has suffered and continues to suffer special damages in the form of pecuniary losses, including but not limited to: loss of existing and prospective customers who have declined to use or continue using TomoCredit's products and services; termination or suspension of relationships with vendors and other business partners; diminution in the value of TomoCredit's business and goodwill; and other economic harm to TomoCredit's business operations. These special damages are directly attributable to Mikula's publication of the false statements in the Articles and Social Media Posts.

65. Mikula's conduct was willful, wanton, and malicious, entitling TomoCredit to an award of punitive damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE,** TomoCredit respectfully requests that the Court enter an order and judgment in favor of Plaintiff TomoCredit and against Defendant Mikula as follows:

a. Permanently enjoining Mikula, and his agents, officers, servants, employees, successors, and assigns and all others acting in concert or privity with Mikula, from publishing further defamatory statements regarding TomoCredit;

b. Directing Mikula, and his agents, officers, servants, employees, successors, and assigns and all others acting in concert or privity with Mikula, to remove, delete, and destroy any defamatory statements in their possession, custody, or control regarding TomoCredit, including but not limited to the Articles and Social Media Posts;

c. Awarding TomoCredit actual damages in an amount to be proven at trial, but no less than $1,000,000;

    d.    Awarding TomoCredit punitive damages in an amount to be proven at trial;

    e.    Awarding TomoCredit interest in an amount according to law; and

    f.    Granting TomoCredit such other and further relief at law or in equity as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, TomoCredit hereby demands a trial by jury in this action on all claims so triable.

Dated: Chicago, Illinois  
        March 3, 2026

Respectfully submitted,

**BLANK ROME LLP**

By: */s/ Allison N. Powers*  
    Allison N. Powers  
    444 West Lake Street, Suite 1650  
    Chicago, IL 60606  
    Tel.: (312) 776-2600  
    Fax: (312) 776-2601  
    allison.powers@blankrome.com

    Craig Weiner (*pro hac vice* forthcoming)  
    Reena Jain (*pro hac vice* forthcoming)  
    1271 Avenue of the Americas  
    New York, NY 10020  
    Tel.: (212) 885-5000  
    Fax: (212) 885-5001  
    craig.weiner@blankrome.com  
    reena.jain@blankrome.com

*Counsel for Plaintiff TomoCredit, Inc.*

## **VERIFICATION**

I, Kristy Kim, in my capacity as founder and CEO of Plaintiff TomoCredit, Inc., hereby state that I am familiar with the facts set forth in the foregoing Verified Complaint, am authorized to execute this Verification on behalf of Plaintiff TomoCredit, Inc., and that the facts set forth herein are true and correct to the best of my knowledge, information, and belief.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on _____**2.27**_____, 2026.

_____
Kristy Kim